# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STATE OF OKLAHOMA *ex rel.* | ) | |
| OFFICE OF MANAGEMENT AND | ) | |
| ENTERPRISE SERVICES, | ) | |
| | ) | |
| Plaintiff, | ) | NO. CIV-25-1147-HE |
| | ) | |
| v. | ) | |
| | ) | |
| KLEO, INC. d/b/a CLASSWALLET, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT KLEO, INC.'S MOTION TO DISMISS PLAINTIFF STATE OF OKLAHOMA'S PETITION AND BRIEF IN SUPPORT**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

PLAINTIFF'S ALLEGATIONS ........................................................................ 2

ARGUMENT ..................................................................................................... 6

    I.        PLAINTIFF FAILS TO PLEAD A BREACH OF CONTRACT ................ 6

           A.      Plaintiff Has Not Adequately Alleged that ClassWallet Breached the Contract by Authorizing Payments for Items Outside the Scope of the Bridge the Gap Program. ................. 7

           B.      Plaintiff Has Not Adequately Alleged that ClassWallet Breached the Contract by Failing to Properly Educate and Advise the Applicants of the Programs. ....................................... 9

           C.      Plaintiff Has Not Adequately Alleged that ClassWallet Breached the Contract by Failing to Maintain Information and Records in Accordance with the Contract. ............................................................................. 10

           D.      Plaintiff Has Not Adequately Alleged that ClassWallet Breached the Contract by Failing to Submit Reports to the USDOE ...................................................................... 11

    II.       PLAINTIFF FAILS TO PLEAD THAT CLASSWALLET IS A SUBRECIPIENT ...................................................................................... 12

CONCLUSION ............................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aids Healthcare Foundation, Inc. v. Okaloosa Aids Support & Informational Servs., Inc.*, No. 4:23cv230-MW/MAF, 2023 WL 11926188
(N.D. Fla. Oct. 10, 2023) ........................................................................ 14

*In re Baldwin*,
593 F.3d 1155 (10th Cir. 2010) ............................................................... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 6

*MJH Props., LLC v. Westchester Surplus Lines Ins. Co.*,
No. CIV-19-0577-HE, 2019 WL 13274425 (W.D. Okla. Dec. 12, 2019) ........ 8, 10, 12

*Morgan v. State Farm Mut. Auto. Ins. Co.*,
488 P.3d 743 (Okla. 2021) ...................................................................... 7

*Osborne v. RJM Acquisitions Funding, LLC*,
754 F. Supp. 2d 1309 (W.D. Okla. 2010) .............................................. 2, 3

*People's Elec. Co-op v. Western Farmers Elec. Co-op.*,
617 Fed. App'x 906 (10th Cir. 2015) ...................................................... 9

*Pierre v. CC Servs., Inc.*,
No. CIV-09-668-M, 2010 WL 124319 (W.D. Okla. Jan. 7, 2010) ......... 6, 11

*Ridge at Red Hawk L.L.C v. Schneider*,
493 F.3d 1174 (10th Cir. 2007) ............................................................... 6

*Robbins v. Oklahoma*,
519 F.3d 1242 (10th Cir. 2008) ....................................................... 6, 10, 11

*Streamline Dirt Works v. Grain Dealers Mut. Ins. Co.*,
No. CIV-16-1104-W, 2017 WL 11139575 (W.D. Okla. Nov. 7, 2017) ........... 9, 10, 12

*Walker v. Builddirect.com Techs., Inc.*,
349 P.3d 549 (Okla. 2015) ...................................................................... 9

**Other Authorities**

2 C.F.R. § 200.331 .................................................................................................. 14

2 C.F.R. § 200.331(a) ............................................................................................. 13

2 C.F.R. § 200.331(b) ............................................................................................. 13

2 CFR § 200.1 ....................................................................................................... 12

## PRELIMINARY STATEMENT

Defendant Kleo, Inc., doing business as ClassWallet, ("Defendant" or "ClassWallet") respectfully moves to dismiss Plaintiff State of Oklahoma's Petition pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim on which relief can be granted. The grounds for dismissal are set forth below.

When Plaintiff State of Oklahoma, on behalf of the Office of Management and Enterprise Services, ("Plaintiff" or the "State") received federal funds for COVID-19 relief, the State contracted with ClassWallet to use ClassWallet's existing online software-as-a-service platform, through which educational grant applicants could apply for and direct those funds.  ClassWallet was contracted as a technology vendor under the terms of its contract with the State and did not have authority to determine which applicants qualified for the funds or which purchases directed by program participants were permissible—any such determinations were solely to be made based on instructions from the State.

Yet, the State now claims that ClassWallet breached its contract by authorizing payments that did not qualify for the programs, failing to provide services on the terms and conditions set forth in the contract, failing to maintain records, and failing to submit reports to the Department of Education.  These claims, however, are either based on obligations that ClassWallet did not have under its contract with the State (pursuant to authority it did not have the power to exercise) or are so vague that they cannot meet the minimum standard for pleading.  More, the State seeks a declaratory judgment that ClassWallet is a subrecipient of the funds under federal law, even though nothing in contract or the relationship between the parties supports such a finding.  It is unsurprising that the State

1

wishes to shift responsibility for the costly deficiencies in its own administrative oversight, as identified by state and federal auditors, but such responsibility lies squarely with the State according to the parties' contract.

For these reasons and the additional reasons below, the Complaint should be dismissed in its entirety.

## PLAINTIFF'S ALLEGATIONS[1]

"In 2020, the COVID-19 pandemic caused unpreceded [sic] disruption to nearly every aspect of life and uniquely impacted families and children of modest and lesser means, leaving educational needs potentially unmet without the benefit of creative, imminent solutions." ECF No. 1-1 at 2, ¶ 5.[2]  In response, "the federal government, through the United States Department of Education ('USDOE'), implemented the Governor's Emergency Education Relief Fund (the 'Fund'), designed, in part, to ensure funds could be quickly dispersed to those in imminent need."  *Id.*

The federal funds were disbursed to the State, which in turn needed a system to allow for purchases to be made at the direction of parents and legal guardians who applied on behalf of their children to participate in the Grants.  *Id.* at 2–3, ¶¶ 7-10; *id.* at 55, ¶¶ I.1–

---

[1]     "When considering a motion to dismiss, courts . . . accept as true all allegations contained in the complaint[.]"  *Osborne v. RJM Acquisitions Funding, LLC*, 754 F. Supp. 2d 1309, 1310 (W.D. Okla. 2010).  Thus, for purposes of its Motion to Dismiss only, ClassWallet treats the State's allegations as true.

[2]     ECF No. 1-1 contains the removed Petition and its attachments. Page numbers refer to those assigned through ECF with specific reference to paragraphs within the text of the document cited.

3.  The State turned to ClassWallet's digital platform as a solution.  ECF No. 1-1 at 2, ¶ 8; *id.* at 55, ¶ II.

ClassWallet provides "the leading digital wallet platform for public dollars." https://classwallet.com/about-us/.³  "A digital wallet is a tool that educational institutions and agencies can give to a distributed network of individuals or organizations to make 'rule-based' purchases."  https://classwallet.com/digital-wallet/.  This solution enables program administrators to "allow users to purchase in a flexible but controlled manner, and allow administrators to maintain compliance and oversight in order to manage budget fidelity and program rules."  *Id.*; *see also id.* ("Digital wallets enable [administrators] to appropriate funding to multiple users and establish distinct rules and restrictions on how those funds can be used.").

"The State ultimately contracted with Defendant."  ECF No. 1-1 at 3, ¶ 9.  To that end, it entered the "State of Oklahoma Contract with ClassWallet" (the "Contract") which included as Attachment C a Scope of Work (the "SOW").  Under the SOW, the State contracted ClassWallet to "create and supply a parent and student friendly online platform for use by Stakeholders*." Id.* at 55, ¶ II.  The SOW further required that "[t]he Platform shall be designed for ease of use by Applicants and include: (1) an Applicant application portal for the Grants and a Provider application portal (collectively, the 'Application

---

³    Because the State cites to ClassWallet's website in the Petition, *see* ECF No. 1-1 at 3, ¶ 9, that website is incorporated by reference into the Petition and properly considered on a motion to dismiss.  *See Osborne*, 754 F. Supp. 2d at 1310 ("When considering a motion to dismiss, courts look to the complaint and those documents attached to or referred to in the complaint[.]").

System'); and (2) a Fiscal Management and Payment System ('Fiscal Management and Payment System'); support and training; and reporting services." *Id.*

The SOW provided specifications for ClassWallet to meet when configuring the Application System and the Fiscal Management and Payment System. *See id.* at 55–56, ¶¶ IV-V. All those specifications were technical in nature, such as providing the ability to "[i]nput personal information for multiple students in household on the same application" and "check balances, authorize payment, and upload invoices and statements." *Id.* The Contract was clear that ClassWallet was constrained to perform its duties and exercise authority only according to the express requirements of the contractual provisions. *See* ECF No. 1-1 at 13, ¶ 3.1 ("The Contract may only be modified, amended, or expanded by an Addendum. Any change to the Contract, including the addition of work or materials . . . is a material breach of the Contract."); *id.* at 35, ¶ 26.8.C ("The Customer and Supplier each grant the other only the licenses and rights specified in the Contract and all other rights and interests are expressly reserved.")

Additionally, the SOW provided that ClassWallet was required to make specific reports available: "1. Status of Provider applications.  2. Status of Applicant applications. 3. Listing of current user accounts.  4. Detail summaries of purchases and amounts.  5. Aggregate account balances.  6. Year-end close-out of accounts and balances." *Id.* at 57, ¶ VII.  And the SOW required ClassWallet to "create and deliver training for all identified stakeholders." *Id.* at 57, ¶ VIII, however, the Contract did not expressly state what training ClassWallet was required to provide, *see id.*

4

In consideration for configuring the Platform to meet the specifications in the SOW, ClassWallet would be paid a $650,000 Implementation Fee. *Id.* at 57. Half of the Implementation Fee would be paid on August 10, 2020, the date for the Platform configuration to be completed and go-live. *See* ECF No. 1-1 at 55, ¶ III.1 & 57. The second half of the Implementation Fee would be paid on August 30, 2020, the date of the Go-Live De-Brief Meeting, at which point ClassWallet would be paid in full. *See id.* at 57. The Platform would remain active well past the final payment; the SOW specified, "The Application System shall be closed once all Grants have been awarded, or December 30, 2020, whichever is earliest." *Id.* at ¶ III.2. "On or about August 10, 2020, Defendant . . . caused the Application System and the Fiscal Management and Payment System to go live." *Id.* at 5, ¶ 17.

Years later, on January 30, 2024, the State filed the Petition in the District of Court of Oklahoma County, and ClassWallet removed the action to the Western District of Oklahoma on October 3, 2025.[4]

---

[4]    The substantial gap in time between the filing of the state court action and ClassWallet's removal is explained in ClassWallet's Notice of Removal. In short, the Attorney General of Oklahoma found this action "wholly without merit" and dismissed it with prejudice. *See* ECF No. 1 at 2, ¶ 3; ECF No. 1-4 at 1. After the Oklahoma Supreme Court resolved a constitutional conflict between the separate authorities of the Governor and the Attorney General to bring suit on behalf of the State, this action was revived, and the State (represented by the Governor's counsel) served the Petition on ClassWallet. ECF No. 1-22 at 4. ClassWallet timely removed this action based on the date of service. ECF No. 1 at 3, ¶ 10.

**ARGUMENT**

"[I]n order to survive a motion to dismiss for failure to state a claim, the complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Pierre v. CC Servs., Inc.*, No. CIV-09-668-M, 2010 WL 124319, at *1 (W.D. Okla. Jan. 7, 2010) (Miles-LaGrange, J., unpublished) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'[A] plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss.'" *Id.* (quoting *Ridge at Red Hawk L.L.C v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

The State brings two claims against ClassWallet: (1) that ClassWallet has breached the Contract and (2) for a declaratory judgment that ClassWallet is a subrecipient under federal law. The State has failed to plausibly allege either claim, and they should therefore be dismissed.

## I.    PLAINTIFF FAILS TO PLEAD A BREACH OF CONTRACT.

In its Petition, the State alleges that ClassWallet has breached the Contract in four ways:[5] by (1) "authorizing payments for items not within the scope of the Bridge the Gap grant program;" (2) "failing to properly educate and advise the applicants of the Programs of related terms and conditions;" (3) "failing to maintain information and records in

---

[5]    The Count for breach of contract alleges that ClassWallet breached the Contract in four specified ways "among other things." ECF No. 1-1 at 5–6, ¶ 25. Alleging that ClassWallet breached the Contract by doing unspecified "things" is plainly insufficient to survive a motion to dismiss. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("Th[e] requirement of plausibility serves . . . to inform the defendants of the actual grounds of the claim against them. 'Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing . . . grounds on which the claim rests.'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007))).

accordance with the Contract; and" (4) "failing to submit reports to the USDOE."   ECF
No. 1-1 at 5–6, ¶ 25.  "The elements of a breach of contract action are: (1) formation of a
contract; (2) breach of the contract; and (3) damages as a result of that breach."  *Morgan
v. State Farm Mut. Auto. Ins. Co.*, 488 P.3d 743, 748 (Okla. 2021).  The State does not
adequately allege any of these breaches and therefore does not adequately allege the second
element of the claim.

> **A.    Plaintiff Has Not Adequately Alleged that ClassWallet Breached the
> Contract by Authorizing Payments for Items Outside the Scope of the
> Bridge the Gap Program.**

The State alleges that ClassWallet breached the Contract by "authorizing payments
for items not within the scope of the Bridge the Gap grant program," but nothing in the
Contract permits, much less obligates, ClassWallet to *authorize* payments.  Under the
SOW, ClassWallet is required to create a Fiscal Management and Payment System that
provides the "[a]bility for Account Holders to pay tuition to Providers" and "to purchase
educational resources other than tuition such as technology, supplies books, etc. with
approved ecommerce vendors integrated into the Fiscal Management and Payment
System," but does not require ClassWallet to determine whether such payments and
purchases comply with the Bridge the Gap grant program. ECF No. 1-1 at 56, ¶ V.

In fact, nothing in the Contract requires ClassWallet to make such determinations;
ClassWallet's sole role was to "create and supply a parent and student friendly online
platform." *Id.* at 55, ¶ II.  This is unsurprising, as ClassWallet is a technology vendor, and
was neither contracted for nor authorized to exercise the judgment that was conferred and
reserved to State education department administrators concerning the propriety of

distribution of grants funds. *See id.* at 35, ¶ 26.8.C (reserving all rights to the State not expressly granted). A review of the Contract makes this distinction of authority clear. *Compare id.* at 55, ¶ IV (describing duties of "Supplier" to provide application and payment software with certain functionality and user interface capabilities), *with id.* at 56, ¶ IV.2.2–3 (separately describing a "System Administrator" as one who "view[s] application status, including what applications are in process, income over guideline, incomplete, or approved").

ClassWallet is a supplier of software, *not* a federal grant administrator. ClassWallet does not make the distribution rules but rather provides the platform on which the rules may be implemented by a program administrator. It is the administrator of the program, not ClassWallet, that makes decisions about whether payments will be approved: "Administrators" "[a]uthorize payments and reimbursements." https://classwallet.com/digital-wallet/. It is the administrators who "[e]nsure schools, vendors and providers meet program standards," "[a]pprov[e] workflow to monitor that all payments are compliant," and "[m]aintain compliance and oversight in order to manage budget fidelity and program rules." https://classwallet.com/scholarships-grants/. The Contract expressly listed the user functionality that ClassWallet was to provide through its online platform. ClassWallet's obligations and authority were limited to those express provisions. *Cf.* ECF No. 1-1 at 14, ¶¶ 3.1; *id.* at 35, 26.8.C.

Because the State has failed to allege that ClassWallet had an obligation to authorize payments, it has also failed to allege that the failure to do so properly is a breach of the Contract. *See MJH Props., LLC v. Westchester Surplus Lines Ins. Co.*, No. CIV-19-0577-

HE, 2019 WL 13274425, at *2 (W.D. Okla. Dec. 12, 2019) (Heaton, J., unpublished) (dismissing a breach of contract claim under Oklahoma law where there was no contractual duty to perform); *Streamline Dirt Works v. Grain Dealers Mut. Ins. Co.*, No. CIV-16-1104-W, 2017 WL 11139575, at *10 (W.D. Okla. Nov. 7, 2017) (liability for breach of contract limited to obligations under agreement) (West, J., unpublished); *accord In re Baldwin*, 593 F.3d 1155, 1162 (10th Cir. 2010) (contracts are enforced as they are written) (applying Oklahoma law); *see also People's Elec. Co-op v. Western Farmers Elec. Co-op.*, 617 Fed. App'x 906, 909 (10th Cir. 2015) ("Under Oklahoma law, 'the paramount objective of contract interpretation is to effectuate the intent of the parties as expressed by the terms of the contract.'" (quoting *Walker v. Builddirect.com Techs., Inc.*, 349 P.3d 549, 552 (Okla. 2015))).

**B.    Plaintiff Has Not Adequately Alleged that ClassWallet Breached the Contract by Failing to Properly Educate and Advise the Applicants of the Programs.**

Under the SOW, ClassWallet "shall create and deliver training for all identified stakeholders," ECF No. 1-1 at 57, ¶ VIII, but nothing in the Contract obligates ClassWallet to "educate and advise the applicants of the Programs *of related terms and conditions*," *id.* at 5, ¶ 25.b (emphasis added). The SOW requires that ClassWallet "create and provide an interactive Application System"; "create, maintain, and operate a Fiscal Management and Payment System;" and "provide customer service for all Stakeholders" relating to operation of the online platforms. *Id.* at 56–57, ¶¶ IV-VI. Nowhere does the Contract require ClassWallet to ensure that users know all terms and conditions of *the grant program*. Fatal to the State's claim of breach, the training provision never specified what

9

training ClassWallet was required to provide. A wholistic reading of the Contract confirms, however, that trainings the State intended to require related only to the public's use and navigation of ClassWallet's software, not the grant program's substantive requirements and qualification standards. Because the Contract did not obligate ClassWallet to "educate and advise the applicants of the Programs of related terms and conditions," the failure to do so cannot be a breach of contract. *See MJH Props., LLC*, 2019 WL 13274425 at *2; *Streamline Dirt Works*, 2017 WL 11139575, at *10.

More, the State fails to allege the terms and conditions of which it claims the Contract required ClassWallet to educate and advise users. And it includes no allegations concerning the training that ClassWallet provided, or why such training constituted a breach of ClassWallet's obligations under the Contract. The Petition, instead, provides only the conclusory allegation that ClassWallet "fail[ed] to properly educate and advise the applicants of the Programs of related terms and conditions." ECF No. 1-1 at 5, ¶ 25.b. Such inadequate allegations cannot survive a motion to dismiss. *See Robbins*, 519 F.3d at 1247-48.

### C. Plaintiff Has Not Adequately Alleged that ClassWallet Breached the Contract by Failing to Maintain Information and Records in Accordance with the Contract.

While the Contract requires that ClassWallet retain its records, ECF No. 1-1 at 22, ¶ 10.2, the State's allegations that ClassWallet failed to do so are wholly insufficient. The Petition alleges only that "Defendant either directly or through a subcontractor failed to maintain all the records necessary to verify that Applications met the Programs' applicable guidelines" and "fail[ed] to maintain information and records in accordance with the

10

Contract." *Id.* at 5, ¶¶ 19, 25.c.  Such conclusory allegations do not "inform the defendant[]
of the actual grounds of the claim against them," as required to survive a motion to dismiss.
*Robbins*, 519 F.3d at 1248.

The State does not allege the records that ClassWallet was required to maintain "in
accordance with the Contract," the specific records that ClassWallet maintained (or
allegedly failed to maintain), or the specific records that were "necessary to verify that
Applications met the Programs' applicable guidelines."  In short, the State provides no
specific allegations concerning the records that ClassWallet was required to maintain or
that it failed to do so.  Without such information, ClassWallet has no way to respond to the
Petition, and such conclusory allegations are insufficient to state a claim.[6]  *See Robbins*,
519 F.3d at 1247-48.  Because the State's allegations do not "nudge [the] claim[] across
the line from conceivable to plausible," they should be dismissed.  *Pierre*, 2010 WL
124319, at *1.

> **D.    Plaintiff Has Not Adequately Alleged that ClassWallet Breached the
> Contract by Failing to Submit Reports to the USDOE.**

As a foundational matter, the Contract does not obligate ClassWallet to submit
reports to the USDOE; the Contract does not even mention the USDOE.  Instead, the SOW
provides for six specific reports that ClassWallet must make "available via the platform":
"1. Status of Provider applications.  2. Status of Applicant applications.  3. Listing of
current user accounts.  4. Detail summaries of purchases and amounts.  5. Aggregate

---

[6]    More, the State fails to explain how it can allege that ClassWallet "issued payment
for items outside the scope of the Bridge the Gap grant program," ECF No. 1-1 at 5, ¶ 21,
if no such records allegedly exist.

account balances.  6. Year-end close-out of accounts and balances."  ECF No. 1-1 at 57, ¶ VII.  ClassWallet provided each of those reports and there is no allegation otherwise. Failure to submit a report that ClassWallet is not required to submit under the Contract cannot be a breach of the Contract.  *See MJH Props., LLC*, 2019 WL 13274425 at *2; *Streamline Dirt Works*, 2017 WL 11139575, at *10.

Because the State has failed to adequately allege the ClassWallet breached the Contract, Count I of the Petition should be dismissed.

## II.    PLAINTIFF FAILS TO PLEAD THAT CLASSWALLET IS A SUBRECIPIENT.

The State's second count seeks a declaration that ClassWallet "be declared a subrecipient for purposes of the Programs and required to comply with related subrecipient guidelines and obligations, including, but not limited to, submitting to USDOE requisite reports."  ECF No. 1-1 at 6, ¶ 27.  Yet, the State fails to plausibly allege that ClassWallet is a subrecipient under federal law.

Under the regulations that apply to the USDOE, a "Subrecipient means an entity, usually but not limited to non-Federal entities, that receives a subaward from a pass-through entity to carry out part of a Federal award[.]"  2 CFR § 200.1.  A "Subaward means an award provided by a pass-through entity to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. *It does not include payments to a contractor, beneficiary, or participant*."  *Id.* (emphasis added).

12

Federal regulations provide that

> Characteristics that support the classification of the entity as a subrecipient include, but are not limited to, when the entity:
>
> (1) Determines who is eligible to receive what Federal assistance;
>
> (2) Has its performance measured in relation to whether the objectives of a Federal program were met;
>
> (3) Has responsibility for programmatic decision-making;
>
> (4) Is responsible for adherence to applicable Federal program requirements specified in the Federal award; and
>
> (5) Implements a program for a public purpose specified in authorizing statute, as opposed to providing goods or services for the benefit of the pass-through entity.

2 C.F.R. § 200.331(a).  By contrast,

> Characteristics that support a procurement relationship between the recipient or subrecipient and a contractor include, but are not limited to, when the contractor:
>
> (1) Provides the goods and services within normal business operations;
>
> (2) Provides similar goods or services to many different purchasers;
>
> (3) Normally operates in a competitive environment;
>
> (4) Provides goods or services that are ancillary to the implementation of a Federal program; and
>
> (5) Is not subject to compliance requirements of a Federal program as a result of the agreement. However, similar requirements may apply for other reasons.

2 C.F.R. § 200.331(b).  Applying these factors to ClassWallet, it is clear that it has

a procurement relationship with the State and is not a subrecipient.  ClassWallet is a

13

technology vendor who provided its digital wallet services to the State so that the State could disperse the funds it received from the federal government.  ClassWallet had no independent decision-making authority and was not operating the Programs.

Under the Contract, ClassWallet provided services within its normal business operations and it provides similar services to many different purchasers.  As the State alleges, ClassWallet is a "national company that serves 20% of all United States state agencies," ECF No. 1-1 at 3, ¶ 9, and provides the digital wallet services it provided to the State in the marketplace.  *See* https://classwallet.com/digital-wallet/.  More, these services are ancillary to the Program—ClassWallet is a technology vendor providing a platform to process applications and payments.  It is not, however, determining who is eligible for the program; rather, it provides a Platform that allows an administrator—in this case, the State—to determine who is eligible.  And, it does not have "its performance measured in relation to whether the objectives of a Federal program were met;" have "responsibility for programmatic decision-making;" or "[i]mplement[] a program for a public purpose specified in authorizing statute."  Nor is it "responsible for adherence to applicable Federal program requirements specified in the Federal award."  *See* 2 C.F.R. § 200.331; *see also Aids Healthcare Foundation, Inc. v. Okaloosa Aids Support & Informational Servs., Inc.*, No. 4:23cv230-MW/MAF, 2023 WL 11926188, at *7-8 (N.D. Fla. Oct. 10, 2023) (Walker, J., unpublished) (finding agreement is a subcontract and not subaward based on nature of agreement).

Thus, the State has failed to allege that ClassWallet is a subrecipient and Count II of the Petition should be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Petition in its entirety with prejudice.

Dated: October 24, 2025

Respectfully submitted,

**TAYLOR, FOSTER, MALLET, DOWNS, RAMSEY & RUSSELL, P.C.**

*/s Stratton Taylor*
Stratton Taylor, OBA #10142
Mark Ramsey, OBA #11159
Jacob Daniel, OBA #32760
400 West Fourth Street
Claremore, OK 74018
(918) 343-4100 telephone
(918) 343-4900 facsimile
staylor@soonerlaw.com
mramsey@soonerlaw.com
jdaniel@soonerlaw.com

**BRYAN CAVE LEIGHTON PAISNER LLP**

Robert J. Hoffman, *pro hac vice*
1200 Main Street, Suite 3800
Kansas City, MO 64105
(816) 374-3200 telephone
(816) 855-3300 facsimile
bob.hoffman@bclplaw.com

**Attorneys for Defendant Kleo, Inc.**

15

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 24, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Cheryl Lynn Plaxico
Austin Mosley
Genter F. Drummond

I hereby certify that on October 24, 2025, I served the same document by US Postal Service to the following, who are not registered participants of the ECF System:

Remington Dean
Benjamin Lepak
**Office of the Governor**
2300 N. Lincoln Blvd, Ste. 212
Oklahoma City, Oklahoma 73105

Garry Gaskins
**Office of the Attorney General**
313 N.E. 21st Street
Oklahoma City, Oklahoma 73105

*/s Stratton Taylor*
Attorney for Defendant Kleo, Inc.
